IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DAMIEN ANTIONE JONES, §
§
Movant, §
§ No. 3:19-cv-1150-B (BT)
v. § No. 3:14-cr-0300-B-2
§
UNITED STATES OF AMERICA, §
§
Respondent. §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Movant Damien Antione Jones, a federal prisoner, filed a *pro se* motion to

vacate, set-aside, or correct his sentence under 28 U.S.C. § 2255. The District Court

referred the resulting action to the United States magistrate judge pursuant to 28

U.S.C. 636(b) and a standing order of reference. For the following reasons, the

Court should deny Jones's § 2255 motion and grant a certificate of appealability.

**Background**

During the late spring and early summer of 2014, Jones participated in a

string of armed robberies at several AutoZone stores and Cash Pawn Plus

pawnshops in Dallas, Texas. In November 2015, Jones pleaded guilty to six felony

offenses charged in a second superseding indictment: (1) conspiracy to interfere

with commerce by robbery in violation of 18 U.S.C. § 1951(a) (count one); (2) using,

carrying, and brandishing a firearm during and in relation to, and possessing and

brandishing a firearm in furtherance of, a crime of violence in violation of 18 U.S.C.

§ 924(c)(1)(A)(ii) (count two); (3) interference with commerce by robbery and aiding and abetting in violation of 18 U.S.C. §§ 1951(a) and 2 (counts three, five, and seven); and (4) using, carrying, brandishing, and discharging a firearm during and in relation to, and possessing, brandishing, and discharging a firearm in furtherance of a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 924(c)(1)(C)(i) and 2 (count eight). The District Court sentenced Jones to 708 months' imprisonment—240 months' imprisonment on each of counts one, three, five and seven, to run consecutively to each other, but only to the extent necessary to produce a combined sentence equal to a total of 324 months' imprisonment; 84 months' imprisonment on count two, to run consecutively to all counts; and 300 months' imprisonment on count eight, also to run consecutively to all counts. The District Court also ordered Jones to pay restitution in the amount of $10,622.98.

Jones appealed to the Fifth Circuit Court of Appeals. But the Fifth Circuit affirmed this Court's judgment. *See United States v. Jones*, 733 F. App'x 198, 200 (5th Cir. 2018) (per curiam). Jones did not petition the Supreme Court for a writ of certiorari. Instead, Jones filed the pending § 2255 motion (CV ECF No. 2) in which he argues: (1) his attorney provided ineffective assistance of counsel in connection with his guilty plea because, among other things, his counsel believed he was actually innocent; and (2) the District Court made a misstatement, an "arithmetic error," at sentencing. Mot. 4 (CV ECF No. 2). Jones also argued, "I would like to preserve my rights to use the *Davis* case (5th circuit) in light of the Supreme Courts [sic] decision[.]" *Id.* 5. Jones was apparently anticipating the

2

Supreme Court's favorable outcome in *United States v. Davis*, 139 S. Ct. 2319 (2019), handed down more than a month later, on June 24, 2019. *Davis* held that the residual clause of § 924(c)—§ 924(c)(3)(B)—is unconstitutionally vague. *Davis*, 139 S. Ct. at 2319; *see also United States v. Dixon*, 799 F. App'x 308, 308 (5th Cir. 2020) (per curiam). Jones also filed a motion for leave to amend his § 2255 motion (CV ECF No. 10), which the Court granted (CV ECF No. 12).

In its initial response, (CV ECF No. 11), the Government argued: (1) Jones's ineffective assistance of counsel claim fails because it is conclusory, and it fails on the merits because he cannot demonstrate prejudice; (2) Jones's claim relating to the pronouncement of his sentence is barred by the law-of-the-case doctrine; (3) Jones's liberally-construed claim under *Davis* is barred by the appellate-rights waiver in his plea agreement; and (4) Jones's "actual innocence" claim is not cognizable, barred by the statute of limitations in 28 U.S.C. § 2255(f), and fails on the merits because he has not established his innocence. Jones filed a reply.

Jones subsequently filed an "Amendment to 2255" (CV ECF No. 15), in which he referenced the First Step Act of 2018 (FSA) and argued that he was entitled to a "sentence reduction" on counts two and eight, his § 924(c) convictions.[1] (*Id.* 1.) Jones further argued that "Congress has done away with 'Enhanced sentences in the second or subsequent of first time offenders in

---

[1] Jones argues that the FSA entitles him to a "sentence reduction" on counts six and eight, his § 924(c) convictions. (CV ECF No. 15 at 1.) Jones is mistaken. His § 924(c) convictions are counts two and eight.

violation of 18 U.S.C. § 924(c)." (*Id.*) Jones also filed a "Supplement Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody" (CV ECF No. 17), citing to *United States v. Reece*, 938 F.3d 630 (5th Cir. 2019) and *Davis*, 139 S. Ct. at 2319, and arguing that his sentence should be vacated, set aside, or corrected. (CV ECF No. 17 at 1.) Jones further argued that at a minimum, the Court should grant him an evidentiary hearing. (*Id.*)

Following the Government's concession that Jones's § 924(c) convictions were "problematic," the Court appointed counsel to represent him. (CV ECF No. 18, 19.) And Jones's attorney filed an opposed motion for leave to file his *pro se* supplemental § 2255 motion. (CV ECF No. 20.) The Court denied the motion on the basis that hybrid representation is not allowed, (CV ECF No. 21), and gave Jones's attorney thirty days to file a supplemental pleading. (*Id.*)

Thereafter, Jones, through counsel, filed a "Supplemental Pleading," (CV ECF No. 22), in which he augmented his ineffective assistance of counsel claims with additional facts and legal argument. Jones also requested that his *pro se* pleadings (CV ECF Nos. 15, 17) be considered. Jones argued that in the Government's response, it incorrectly calculated the time for filing his *pro se* "Motion to Amend § 2255." Jones claimed that his conviction and sentence became final on October 28, 2019, and he timely filed his actual innocence claim on August 6, 2019.

The Government filed a supplemental response (CV ECF No. 27), in which it acknowledges the error in its initial response regarding the timeliness of Jones's

actual innocence claim. It argued that Jones failed to demonstrate that ineffective assistance of counsel rendered his guilty plea unknowing or involuntary, and his *Davis* claim is barred by the appellate-rights waiver in his plea agreement. In his reply (CV ECF No. 28), Jones cites two opinions from this District, *Thompson v. United States*, No. 3:18-cv-2840-K (N.D. Tex.), and *Pearson v. United States*, No. 3:18-cv-1677-K (N.D. Tex.), in which the Court recognized a miscarriage of justice exception under similar circumstances, granted habeas relief, vacated the movant's § 924(c) convictions, and ordered a re-sentencing. Jones argues that his case is comparable to *Thompson* and *Pearson* because his convictions were predicated on a conspiracy to commit Hobbs Act robbery, which is no longer a crime of violence under *Davis*. Jones's § 2255 motion is ripe for determination.

## Legal Standards and Analysis

I. <u>Jones's ineffective assistance of counsel claim fails.</u>

Jones argues that his attorney provided ineffective assistance of counsel "leading up to the guilty plea" because, "[b]y counsels own admission, his client pleaded guilty before he understood the evidence against him." Mot. 4 (CV ECF No. 2). Jones further argues that the claim by his attorney at the hearing on the motion to withdraw his guilty plea "essentially suggest[ed]" that his attorney allowed him to plead guilty despite his belief that the evidence established he was innocent. *Id.* Jones contends that his attorney's deficient performance deprived him of adequate assistance of counsel in violation of the Sixth Amendment and rendered his guilty plea unknowing and involuntary. *Id.* Jones concludes that his

guilty plea was not knowing and voluntary because his attorney failed to explain the evidence to him before he entered his guilty plea and his attorney encouraged him to waive the reading of his indictment, which caused him not to understand the charges against him. Supp. Mot. 4-11 (ECF No. 22).

"This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)). "[M]ere conclusory allegations on critical issues are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (per curiam) (quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)). Where a habeas petitioner fails to brief an argument adequately, it is considered waived. *Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) (citing *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

When a litigant is proceeding *pro se*, the court must liberally construe his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (recognizing that *pro se* pleadings are "to be liberally construed" and "held to less stringent standards than pleadings drafted by lawyers"); *see also Pena v. United States*, 122 F.3d 3, 4 (5th Cir. 1997) ("Because [the party] is *pro se*, we construe his pleadings liberally.") (citing *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472 & n.16 (5th Cir. 1996));

6

*Hernandez v. Maxwell*, 905 F.2d 94, 96 (5th Cir. 1990) (citing *Haines v. Kerner*, 404 U.S. 519 (1972), and noting that it calls for an expansive reading of *pro se* pleadings).

Jones was proceeding *pro se* when he filed his initial § 2255 motion. Therefore, the Court will liberally construe his ineffective assistance of counsel claims. *See Erickson*, 551 U.S. at 94. And although Jones's ineffective assistance of counsel claims are short and conclusory, they are legally sufficient to state a claim. The Court thus proceeds to the merits of Jones's ineffective assistance of counsel claims.

To sustain a claim of ineffective assistance of counsel, a movant must show: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive the movant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, a movant must prove prejudice. To prove such prejudice, the movant must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466

7

U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

Jones argues that his attorney did not provide adequate assistance of counsel "leading up to the guilty plea." Mot. 4 (ECF No. 2). "A plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction." *United States v. Cothran*, 302 F.3d 279, 285-86 (5th Cir. 2002) (quoting *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir. 1991)); *see also United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019)*; United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008); *Barrientos v. United States*, 668 F.2d 838, 842 (5th Cir. 1982). Additionally, this waiver includes all claims of ineffective assistance of counsel, except those relating to the defendant's entry of a guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); *see also United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (noting that the voluntary guilty plea waiver includes all claims of ineffective assistance of counsel unless the ineffective assistance is alleged to have rendered the guilty plea involuntary); *Pena v. United States*, 2021 WL 2920616, at *3 (N.D. Tex. July 12, 2021) (same). When the movant's claims relate to the entry of his guilty plea, he must show that he would not have pleaded guilty but for his counsel's deficient performance and would have instead insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Cavitt*, 550 F.3d at 441 ("In order '[t]o prove

8

prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'") (quoting *Bond v. Dretke*, 384 F.3d 166, 167-68 (5th Cir. 2004)).

Jones pleaded guilty on November 30, 2015. (CR ECF No. 81.) His ineffective assistance of counsel claim thus relates to allegedly deficient conduct by Jones's attorney occurring prior to the date of his guilty plea. However, Jones has not shown that but for his attorney's deficient performance he would have insisted on going to trial, and it is his burden to make this showing. *See Hill*, 474 U.S. at 59; *see also Cavitt*, 550 F.3d at 441; *Bond*, 384 F.3d at 167-68. Jones entered into a favorable plea agreement with the Government, pursuant to which he pleaded guilty to counts one, two, three, five, seven, and eight of the second superseding indictment, and the Government dismissed counts four and six. (CR ECF No. 154.)

Jones also argues that his attorney provided ineffective assistance of counsel when, "[b]y counsels own admission, his client pleaded guilty before he understood the evidence against him." Mot. 4 (CV ECF No. 2). Jones contends that the claim by his attorney at the hearing on his motion to withdraw his guilty plea "essentially suggest[ed]" that his attorney allowed him to plead guilty despite his belief that the evidence established he was innocent. (*Id.*) Jones alleges that at his Rule 11 hearing his attorney advised him to waive the reading his indictment and the plea agreement, and this caused him to not understand what essential elements the Government would need to prove, as opposed to the essential elements stated in

9

the factual resume. Supp. Mot. 7 (ECF No. 22). Jones concludes that his attorney's deficient performance deprived him of adequate assistance in violation of the Sixth Amendment and rendered his guilty plea unknowing and involuntary. Mot. 4 (ECF No. 2).

Jones's attorney attempted to demonstrate that Jones was innocent after Jones decided to withdraw his guilty plea. (CR ECF No. 92 at 3). Jones's attorney argued that the Government's evidence against Jones consisted primarily of cell phone records the Government attributed to Jones's cell phone number. (*Id.*) Jones's attorney further argued that the cell phone records demonstrate that the cell phone number was "recorded" several miles away from two robberies on June 2, 2014 and June 17, 2014, around the time of the robberies. *Id.* Jones's attorney concluded that the cell phone records undercut the Government's claim that Jones was present at those two robberies. (*Id.*) However, Jones's attorney's attempts to show that Jones was innocent were unsuccessful because the cell phone evidence relied upon was entirely incriminating. Jones cannot show that his attorney provided deficient performance because ultimately his attorney was not successful in demonstrating Jones's innocence. *See Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983) ("The fact that trial counsel was unsuccessful in his efforts does not constitute, in light of the entire record, a basis for habeas corpus relief."); *Thomas v. United States*, 2021 WL 2690094, at *4 (N.D. Tex. June 1, 2021) (same*). Jones claims that his attorney's deficient performance led to his conviction, and he argues the evidence shows he is innocent. Jones is mistaken, and he cannot show that his

attorney's performance prejudiced him when his attorney failed to show that he was innocent. Therefore, Jones cannot demonstrate prejudice under *Strickland*, and this ineffective assistance of counsel claim must fail. *See Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995) ("[A] court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test."); *see also Okechuku v. United States*, 2021 WL 2690091, at *9 (N.D. Tex. June 14, 2021), *rec. adopted* 2021 WL 2685283 (N.D. Tex. June 30, 2021).

Jones also admitted on more than one occasion that he was guilty. Formal declarations in open court carry a strong presumption of truth. *See Blackledge*, 431 U.S. at 74; *see also United States v. Arbuckle*, 390 F. App'x 412, 416 (5th Cir. 2010) (citing *United State v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009)). And "a defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985)); *see also United States v. Gonzalez-Archuleta*, 507 F. App'x 441, 442 (5th Cir. 2013) (per curiam) (citing *McKnight*, 570 F.3d at 649; *Cervantes*, 132 F.3d at 1110). On November 13, 2015, Jones signed a factual resume in which he admitted to committing the offenses charged in counts one, two, three, five, seven, and eight of the second superseding indictment. (CR ECF No. 69.) Later, Jones stated under oath that the factual resume was true and correct. (CR ECF No. 86 at 23-27.) Jones also admitted under oath that he was guilty of the crimes to which he pleaded

guilty. (*Id.*) Jones's factual resume and his sworn statements at his Rule 11 hearing belie his later claims that he was innocent and felt pressure or intimidation to plead guilty.

Jones argues that his attorney provided ineffective assistance at his Rule 11 hearing when he advised Jones to waive the reading of his second superseding indictment and plea agreement. Supp. Mot. 7 (ECF No. 22). According to Jones, this "erroneous advise [sic]" detrimentally impacted the outcome of his Rule 11 hearing because he failed to understand that the Government would need to prove the essential elements of the second superseding indictment, as opposed to the essential elements of the charges as set forth in the factual resume. (*Id.*) Jones concludes that his "trial counsel never advised [him] of the legal standards involved with the offenses charged in the [second superseding] indictment." (*Id.*)

This argument fails for several reasons. Initially, Jones does not suggest how he was prejudiced by his attorney encouraging him to waive the reading of the second superseding indictment and plea agreement. Specifically, Jones does not explain how the essential elements set forth in the second superseding indictment and factual resume differed. For this reason, he has failed to demonstrate prejudice under *Strickland.* Also, Jones argues that he did not understand the charges against him, but the proceedings at his Rule 11 hearing belie that claim. At Jones's Rule 11 hearing, the District Court ensured that Jones understood the charges to which he was pleading guilty, the essential elements of each those offenses, and the penalties he faced at sentencing. *See* (ECF No. 86). In fact, nothing in the Rule 11

record suggests that Jones was not fully aware of the charges against him. Jones waived the reading of the second superseding indictment, plea agreement, and plea agreement supplement, but the District Court ensured he was properly advised with respect to each. (*Id.* at 5, 6.) Near the start of the Rule 11 hearing, the District Court advised Jones that as the hearing progressed, if he had any questions, he was to ask them, and he should also feel free to speak with his attorney. (*Id.* at 3.) The District Court stated, "I want to make sure you don't have any doubts when you leave here. All right?" (*Id.*) When Jones was asked if he had a chance to review the applicable indictment, the second superseding indictment, with his attorney, Jones responded affirmatively. (*Id.* at 5.) Jones also stated that he had the charges read to him, and he fully understood what he was charged with. (*Id.*) The District Court asked, "[D]o you fully understand all of the charges? No questions about the charges?" (*Id.*) Jones stated that he had no questions and understood. (*Id.*) Jones also advised the District Court that he was fully satisfied with his attorney's representation. (*Id.* at 5-6.) Jones represented that there he had a plea agreement with the Government and a plea agreement supplement, he carefully reviewed both with his attorney, and he signed the last page of both documents. (*Id.* at 6.) The District Court advised Jones that if he had proceeded to trial, the Government would bear the burden of proof, he would be presumed to be innocent, and he would not have to offer any evidence or testify unless he chose to do so. (*Id.* at 11-13.) The District Court informed Jones of the maximum and minimum penalties he faced because of his guilty plea. (*Id.* at 14-22.) Finally, the Government advised

Jones of the essential elements of each offense to which he pleaded guilty. (*Id.* at 24-27.) Jones responded that he understood the essential elements for each charge to which he pleaded guilty, he had no questions regarding the essential elements, he did not need to discuss the essential elements any further, and he committed each of the essential elements. (*Id.* at 27-28.)

Although he attempts to do so, Jones cannot refute his Rule 11 testimony now. "[A] defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." *Cervantes*, 132 F.3d at 1110 (citing *Fuller*, 769 F.2d at 1099). Therefore, Jones has failed to overcome the statements he made under oath at his Rule 11 hearing.

Last, Jones relies on the Government's cell phone evidence to support his actual innocence claim, but the evidence supports the conclusion that he was guilty as charged. (CR ECF No. 85 at 2; CR ECF No. 92 at 3.) At the hearing on Jones's motion to withdraw his guilty plea, Jones claimed that the cell phone tower information showed that he could not possibly have committed the robberies on June 2, 2014 and June 17, 2014. (CR ECF No. 184 at 5-7.) However, the Government's evidence supported Jones's guilt, and his post-guilty plea claims to the contrary are based on a misunderstanding, or a misreading, of the Government's evidence against him. The evidence at issue was introduced through Mark W. Sedwick, a special agent with the Federal Bureau of Investigations (FBI), and a series of PowerPoint slides. (CR ECF No. 184 at 27-47.) The evidence showed

14

that Jones's cell phone was using towers in the vicinity of the robberies both before and after the robberies. (*Id.*)

### a. June 2, 2014 robbery

Jones was charged and pleaded guilty to robbing an AutoZone store located at 2842 South Buckner Boulevard in Dallas, Texas, on June 2, 2014. (CR ECF No. 69 at 3.) The Government's exhibits depicted the store's location with Jones's phone calls before and after the robbery. The robbery happened around 9:54 p.m., and cell tower records obtained by the Government showed that Jones made calls nearby at 9:34 p.m. and 9:35 p.m. (CR ECF No. 172-2 at 9.) Agent Sedwick's testimony and the prosecutor's proffer demonstrated that Jones's cell phone was within the tower's area of coverage just 20 minutes before the robbery occurred. (CR ECF No. 184 at 15-16, 29-30, 36, 38-40.) The Government's evidence showed that during the pre-robbery calls, Jones's cell phone was using a tower whose coverage began approximately 0.5 miles from the AutoZone. During the minutes following the robbery, a call was made from Jones's cell phone, and it connected to a tower whose coverage extended up to three miles away. (CR ECF No. 172-2 at 10.) The phone call went to the cell phone of Jones's girlfriend, and her cell phone connected to its own tower. (CR ECF No. 184 at 31, 39-40.) The Government's cell phone evidence showed that Jones's residence, located at 1615 John West Boulevard in Dallas, Texas, is 3.5 to 4 miles away. (*Id.* at 39.) The Government's evidence also shows that Jones's cell phone made a post-robbery call to his girlfriend's phone, and at that time, Jones's cell phone was using a cell tower

15

toward the east and in the direction of his residence, and his girlfriend's phone takes the call from the west also in the direction of his residence. (CR ECF No. 172-2 at 11; CR ECF No. 184 at 40-41.)

At Jones's plea-withdrawal hearing, he insisted that this evidence demonstrated his innocence because, according to him, he could not have possibly made the 10:00 p.m. call if he had committed the robbery at 9:54 p.m. (CR ECF No. 184 at 7.) However, it was certainly possible, as Agent Sedwick explained, for Jones's cell phone to have made a call within that tower's range after he robbed the AutoZone. (*Id*. at 42-43.)

On appeal, Jones speculated that minutes after the robbery he could not have made the 10:00 p.m. call so far away. (*United States v. Jones*, No. 16-11371 (5th Cir.), Appellant's Br. at 15-16). In support of this argument, Jones cited to Agent Sedwick's statement that "he could not surmise from the cell-tower records 'where he was because there were no phone calls.'" (*Jones*, No. 16-11371, Appellant's Br. at 16.) However, in making his argument, Jones took Agent Sedwick's testimony out of context. When Agent Sedwick's testimony, as provided at the hearing, is reviewed in context, it shows he was explaining that when the calls between 9:34 p.m. and 9:35 p.m. are evaluated vis-a-vis the 9:54 p.m. robbery, he could not say exactly where Jones was at that time because his phone did not make many any calls during that period. (CR ECF No. 184 at 38-40; *Compare* CR ECF No. 172-2 at 9 *with* CR ECF No. 172 at 10.) At the conclusion of the plea-withdrawal hearing, the District Court concluded that, at a minimum, there is

16

"strong circumstantial evidence" Jones was "in the area and did commit the crime," and he had simply changed his mind about pleading guilty. (CR ECF No. 184 at 50-51.) The Fifth Circuit found no abuse of discretion with this ruling. *See Jones*, 733 F. App'x at 199 (citing *United States v. McKnight*, 570 F.3d 641, 645 (5th Cir. 2009)).

### b. June 17, 2014 robbery

Jones was charged and pleaded guilty to robbing an AutoZone store at 9711 Plano Road in Dallas, Texas, on June 17, 2014. (CR ECF No. 41 at 13.) The Government's evidence showed that during the minutes prior to and after robbery, there were a series of four phone calls between Jones's cell phone and co-conspirator Savalas Love's cell phone. The calls connected through cell phone towers that had terminal points within one mile of the AutoZone store. (CR ECF No. 172-1 at 78; CR ECF No. 184 at 31, 33, 35-36.) This is consistent with Love's role in scouting the store to ensure there was no security present. (CR ECF No. 111 at 7.) During the minutes after the robbery, Jones's cell phone called his girlfriend's cell phone, and at the time of that call, Jones's cell phone connected via a cell tower with a terminal point about 2.5 miles from AutoZone but with a range that extends closer to the store. Jones's girlfriend's cell phone takes the call, but it connected to a tower that had a terminal point within 1.5 miles of the location where Jones and the others ditched the getaway car after a high-speed chase with police. (CR ECF No. 172-1 at 70; CR ECF No. 184 at 36-37.) The site where the vehicle was abandoned in Mesquite, Texas is about 2.5 miles away from Jones's residence at

1815 John West Boulevard in Dallas, Texas. Just minutes before the getaway car was recovered, Jones's cell phone made calls to co-conspirator Love, and the call connected via two cell phone towers in the vicinity of the recovery site. (CR ECF No. 172-1 at 80-81; CR ECF No. 184 at 37-38.)

At the guilty plea-withdrawal hearing, Jones argued that the evidence indicated the robbery occurred at 9:08 p.m., but the Government's evidence showed that it occurred at 9:02 p.m. (CR ECF No. 184 at 5-6, 15.) Assuming the robbery took place at 9:08 p.m., as Jones argued, and in the absence of surveillance video showing a robber making a phone call, Jones claims that he could not have been in the store robbing it while also making a call at 9:09 p.m. Jones's attorney argued, "Briefly, if I may, Your Honor. I did not bring with me the police report, but my recollection is on the one . . . according to the police report, the report alleges that 9:08 the suspects came in, not at not 9:02." (*Id.* at 23.) The District Court stated that it took defense counsel's word for that but pointed out its understanding of the evidence-within a ten-minute stretch-Jones's cell phone was within just a few miles of the store. (*Id.* at 23-24.) The source of the discrepancy appears to be the difference between the time of the 911 call and the time stamps on the AutoZone's security camera. (*Jones*, No. 16-11371, Attach. to Feb. 14, 2018 Mot.). The time stamps on the security camera show a time of 9:08 p.m., but the prosecutor explained at the hearing that the 911 call time was used as the most accurate time, and the agent testified to the time as being 9:02 p.m. (CR ECF No. 184 at 27-28, 34.)

In any event, the District Court noted its conclusion that the evidence did not demonstrate innocence based on the presence of Jones's cell phone nearby the robbery, and it showed his presence in the area in the time periods before and after the robbery. (*Id.* at 45-50.) The District Court concluded that Jones had simply reconsidered his guilty plea. (*Id.* at 48.) As noted, the Fifth Circuit determined that this finding was not an abuse of discretion. *See Jones*, 733 F. App'x at 199 (citing *McKnight*, 570 F.3d at 645).

Jones has now attempted to re-state his claims under the guise of a claim of ineffective assistance of counsel because, at most, his attorney was not successful in showing his innocence. Jones alleges that his attorney did not understand the evidence, and if that is the case, he can show deficient performance, but he cannot demonstrate prejudice. After all, the District Court found that Jones merely changed his mind about his plea agreement after the fact. (CR ECF No. 184 at 48.)

II. <u>Jones's actual innocence claim is not cognizable and fails on the merits.</u>

Jones claims that he is actually innocent of the crimes to which he pleaded guilty, based on cell phone tower information. (CV ECF No. 10 at 1.) He argues that the "(government's evidence is in clear error relating to those facts)." (*Id.*) He further argues that the Government "inflate[d] the credibility of the evidence by using a 'Pie/triangle' to place appeallant [sic] were [sic] they wanted him to be, when in fact the government agent acknowledged that he could not surmise from cell tower records 'where appeallant [sic] was because there were no phone calls.'"

(*Id.*) Jones concludes that the Government's agent did not know, and he "could only speculate." (*Id.*)

Jones's stand-alone claim of actual innocence fails because it is not a ground for habeas relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *see also Reed v. Stephens*, 739 F.3d 753, 766-68 (5th Cir. 2014); *Foster v. Quarterman*, 466 F.3d 359, 367-68 (5th Cir. 2006); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000). Rather, an actual innocence claim is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera*, 506 U.S. at 404. Moreover, the burden of demonstrating actual innocence is extraordinary. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In fact, "in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* at 324. Jones's constitutional claim of ineffective assistance of counsel claim is not otherwise procedurally barred, and for this reason, the Court need not address his "actual innocence" arguments. Accordingly, Jones's actual innocence claim is not cognizable.

Jones's actual innocence claim also fails on the merits. As discussed at length above, the Government's cell phone tower evidence, which Jones relies on, does not support his claim that he is actually innocent. Rather, the Government's evidence is incriminating.

20

For these reasons, Jones's actual innocence claim is not cognizable in this federal habeas action, and it fails on the merits. Therefore, the Court should deny Jones's actual innocence claim.

III. <u>Jones's claim that an arithmetic error occurred at sentencing is barred by the law-of-the-case doctrine.</u>

Jones argues that an error occurred at his sentencing hearing. Mot. 4 (ECF No. 2.) Specifically, contends that there was a "Misstatement by Judge," an "arithmetic error." (*Id.*)

A claim "raised and rejected on direct appeal" cannot not be raised in a § 2255 motion on collateral review. *See United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004); *see also United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions."); *United States v. Goudeau*, 512 F. App'x 390, 393 (5th Cir. 2013) (affirming denial of § 2255 motion under law-of-the-case doctrine after the appellate court dismissed defendant's direct appeal as barred by an appeal waiver). The law-of-the-case doctrine generally precludes reexamination of issues of law or fact decided on appeal. *USPPS, Ltd. v. Dennison Corp.*, 647 F.3d 274, 282 (5th Cir. 2011).

Jones's claim that the District Judge made an arithmetic error at sentencing was raised on direct appeal. *Jones*, 733 F. App'x at 199-200. *See also* (Mot. 4 (ECF No. 2) (Jones concedes the issue was raised and addressed on direct appeal)). The Fifth Circuit concluded: the misstatement at Jones's sentencing hearing was not an

arithmetic error; Jones's argument was barred by the appeal waiver in his plea agreement; and Jones's argument did not fall within the arithmetic error exception to the waiver. Jones, 733 F. App'x at 200. Jones's claim is barred for re-litigation by the law-of-the-case doctrine, and it should therefore be dismissed.

IV. Jones's *Davis* claim is waived.

Jones asserted a *Davis* claim for the first time in his § 2255 motion when he argued, "I would like to preserve any rights to use the *Davis* case (5th circuit) in light of the Supreme Courts [sic] decision[.]" Mot. 5 (CV ECF No. 2). After *Davis*, Jones's § 924(c) conviction, count two, which is predicated on his conviction for conspiracy to commit Hobbs Act robbery, is "problematic" because conspiracy to commit Hobbs Act robbery does not satisfy § 924(c)(3)(A), and § 924(c)(3)(B) can no longer support it. *See United States v. Lewis*, 907 F.3d 891, 894-95 (5th Cir. 2018); *see also Reece*, 938 F.3d at 635 (holding that *Davis* applies retroactively to cases on collateral review). However, Jones's *Davis* claim is waived by the appellate-rights waiver provision in his plea agreement.

On November 30, 2015, Jones pleaded guilty pursuant to a written plea agreement. (CR ECF No. 70.) The plea agreement specifically included the following waiver provision:

> **Waiver of right to appeal or otherwise challenge sentence:** Jones waives his rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal from his convictions and sentences. He further waives his right to contest his convictions and sentences in any collateral proceeding, including proceedings under 28 U.S.C. § 2241 and 28 U.S.C. § 2255. Jones, however, reserves the

> rights (a) to bring a direct appeal of (i) a sentence
> exceeding the statutory maximum punishment, or (ii) an
> arithmetic error at sentencing (b) to challenge the
> voluntariness of his pleas of guilty or this waiver, and (c)
> to bring a claim of ineffective assistance of counsel.

(*Id.* at 7.) Jones's *Davis* claim, which challenges his § 924(c) conviction, does not specifically fall within any reservation of rights contained in his appellate-rights waiver provision.

Generally, a collateral review waiver provision is enforced where the waiver "was knowing and voluntary, and if the waiver applies to the circumstances at hand." *United States v. Walters*, 732 F.3d 489, 491 (5th Cir. 2013) (citing *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005))*; see also United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). However, the Fifth Circuit Court of Appeals has recognized exceptions to this general enforcement rule where a movant raises a claim of ineffective assistance of counsel, or the sentence exceeds the statutory maximum. *United States v. Barnes*, 953 F.3d 383, 388-89 (5th Cir. 2020); *see also United States v. Hollins*, 97 F. App'x 477, 479 (5th Cir. 2004).

There is no indication from the record that Jones's appellate-rights waiver was not informed and voluntary. In fact, in his plea agreement, Jones acknowledged his guilty plea was "freely and voluntarily made and [is] not the result of force or threats, or of promises apart from those set forth in this plea agreement. There have been no guarantees or promises from anyone as to what sentences the Court will impose." (CR ECF No. 70 at 6.) Jones additionally acknowledged that he had "thoroughly reviewed all legal and factual aspects of this

case with his lawyer and is fully satisfied with that lawyer's legal representation . . . [he] has received from his lawyer explanations satisfactory to him concerning each paragraph of this plea agreement, each of his rights affected by this agreement, and the alternatives available to him other than entering into this agreement." (*Id.* at 7.) Jones then conceded "that he [was] guilty, and after conferring with his lawyer, [he] has concluded that it is in his best interest to enter into this plea agreement and all its terms, rather than to proceed to trial in this case." (*Id.*)

The Fifth Circuit Court of Appeals has not specifically ruled on the validity of a collateral-review waiver in the context of *Davis*, but the Court recently addressed a case that is otherwise comparable and instructive here: *United States v. Barnes*, 953 F.3d 383 (5th Cir. 2020).[2] In *Barnes*, the movant pleaded guilty pursuant to a plea agreement and waived his right to challenge his conviction and sentence under the Armed Career Criminal Act (ACCA), directly and collaterally, and he was sentenced under the ACCA. 953 F.3d at 385. Then, in *Johnson v. United States*, 576 U.S. 591 (2015), the Supreme Court held the ACCA's residual clause to be unconstitutional. *Barnes*, 953 F.3d at 385. Barnes filed a motion under 28

---

[2] The Fifth Circuit recently held that a *Davis* claim did not fall within the terms of an appellate rights waiver in a plea agreement. *See United States v. Picazo-Lucas*, 821 F. App'x 335 (5th Cir. 2020) (per curiam). However, that decision is not controlling here because it was made in the context of a direct appeal. The decision was also made in an unpublished opinion. *See Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) ("An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority.").

U.S.C. § 2255, which was based on *Johnson. Barnes*, 953 F.3d at 385. The district court dismissed Barnes's motion, and he appealed. *Id.*

Before the Fifth Circuit Court of Appeals, Barnes attempted to attack the validity of his waiver by arguing that he could not waive a right that was unknown at the time of his waiver. *Id.* at 386-87. The Court noted his argument was foreclosed by *United States v. Burns*, 433 F.3d 442 (5th Cir. 2005), which held that "an otherwise valid appeal waiver is not rendered invalid, or inapplicable to an appeal seeking to raise a *Booker* . . . issue (whether or not that issue would have substantive merit), merely because the waiver was made before *Booker*." *Barnes*, 953 F.3d at 387. The Court also noted that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea resulted on a faulty premise." *Id.* at 387 (quoting *Brady v. United States*, 397 U.S. 742, 757 (1970)). The Court pointed out that it had only recognized two exceptions to the general rule that a knowing and voluntary appellate and collateral-review waiver is enforceable: (1) ineffective assistance of counsel, and (2) a sentence exceeding the statutory maximum. *Id.* at 388-89. In another attempt to attack the validity of his waiver, Barnes argued that his sentence was unlawfully imposed because, following the Supreme Court's decision in *Johnson*, it violated the Constitution. *Id.* at 389. The Court found "that doesn't get [Barnes] out from under the collateral-review waiver to which he agreed." *Id.* The Court further found that this is so because "defendants can waive the right to challenge both illegal and unconstitutional sentences." *Id.* Finally,

Barnes argued that his waiver should not be enforced due to the "miscarriage of justice" exception. *Id.* The Court refused to apply the exception, noting that although other circuits recognize such an exception, the Fifth Circuit has declined to explicitly adopt or reject it. *Id.* (citing *United States v. Ford*, 688 F. App'x 309, 309 (5th Cir. 2017) (per curiam)). Ultimately, the Fifth Circuit held that Barnes's § 2255 motion was barred by the collateral-review waiver, and his appeal was dismissed. *Id.* at 390.

In sum, Jones's plea was knowing and voluntary, and his *Davis* claim is barred by the appellate-rights waiver in his plea agreement. *See Love v. United States*, 2021 WL 2879615, at *2-5 (N.D. Tex. May 5, 2021) (Rutherford, M.J.) (holding the movant's *Davis* claim was waived under the collateral remedy waiver in his plea agreement), *rec. adopted,* 2021 WL 2252141 (N.D. Tex. June 2, 2021) (Boyle, J.); *Jones v. United States*, 2020 WL 7753718, at *3-*5 (N.D. Tex. Dec. 10, 2020) (Rutherford, M.J.) (same), *rec. adopted* 2020 WL 7711910 (N.D. Tex. Dec. 29, 2020) (Boyle, J.); *Brooks v. United States*, 2020 WL 1855382, at *3-*4 (N.D. Tex. Mar. 2, 2020) (Toliver, M.J.) (same), *rec. adopted* 2020 WL 1848050 (N.D. Tex. Apr. 13, 2020) (Lynn, C.J.); *see also United States v. Williams*, 2020 WL 7861309, at *2 (E.D. La. Dec. 31, 2020) (same); *Hernandez v. United States*, 2020 WL 4782336, at *2 (E.D. Tex. June 16, 2020) (same), *rec. adopted* 2020 WL 4747720 (E.D. Tex. Aug. 15, 2020); *Kimble v. United States*, 2020 WL 4808608, at *2 (E.D. Tex. June 25, 2020) (same), *rec. adopted*, 2020 WL 4793243 (E.D. Tex. Aug. 17, 2020).

At least one court in this district has found that, with respect to a *Davis* claim, the collateral remedy waiver is unenforceable under the miscarriage of justice exception. *See Ornelas-Castro v. United States*, 2021 WL 1117172, at \*2 (N.D. Tex. Mar. 23, 2021) (Kinkeade, J.) (relying on the miscarriage of justice exception to grant relief on a *Davis* claim under § 2255); *Thompson v. United States*, 2020 WL 1905817, at \*1-\*2 (N.D. Tex. Apr. 17, 2020) (Kinkeade, J.) (same); *Pearson v. United States*, 2020 WL 1905239, at \*3-\*4 (N.D. Tex. Apr. 17, 2020) (Kinkeade, J.) (same). The Court should decline to apply the miscarriage of justice exception here because the Fifth Circuit Court of Appeals recently held: "Though some circuits recognize [the miscarriage of justice] exception, we have declined explicitly either to adopt or reject it." *Barnes*, 953 F.3d at 389 (citing *Ford*, 688 F. App'x at 309); *see also United States v. Flores*, 765 F. App'x 107, 108 (5th Cir. 2019) ("[W]e repeatedly have declined to apply the miscarriage of justice exception.") (citing *United States v. Arredondo*, F. App'x 243, 244 (5th Cir. 2017); *United States v. De Cay*, 359 F. App'x 514, 516 (5th Cir. 2010)); *United States v. Powell*, 574 F. App'x 390, 394 (5th Cir. 2014) (per curiam) (noting that the Fifth Circuit has found it unnecessary to adopt or reject analysis under the miscarriage of justice) (citing *United States v. Riley*, 381 F. App'x 315, 316 (5th Cir. 2010)).

The Seventh Circuit has recognized a manifest-justice exception, but even there, the Court recently held that two defendants in a virtually identical situation as Jones could not benefit from the exception. *Oliver v. United States*, 951 F.3d 841, 847 (7th Cir. 2020). The Court explained:

> The robbery of pawnshop plainly violated the Hobbs Act, which we and other circuits have held, after *Johnson*, qualifies as a "crime of violence" under § 924(c)'s elements clause. Thus, even overlooking the shootout that occurred, the government could easily have premised the § 924(c) counts on the Hobbs Act robbery of the pawn shop in Indiana. It is not a miscarriage of justice to refuse to put Oliver and Ross in a better position than they would have been in if all relevant actors had foreseen *Davis*.

*Id.* (internal citations omitted). The same rationale is applicable here; Jones committed three substantive Hobbs Act robberies (counts three, five, and seven), and he admitted he committed those offenses in his factual resume and under oath at his Rule 11 hearing on November 30, 2015. (CR ECF Nos. 69, 86.) Therefore, enforcing Jones's appellate-rights waiver would not result in a miscarriage of justice. Likewise, Jones should not be allowed to benefit from a windfall that neither he nor the Government anticipated or bargained for.

For these reasons, Jones's *Davis* claim is waived. However, as addressed below, the Court will recommend that a certificate of appealability be granted.

## Certificate of Appealability

A certificate of appealability (COA) will be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 330 (2003); *accord Foster v. Quarterman*, 466 F.3d 359, 364 (5th Cir. 2006). The applicant makes a substantial showing if he demonstrates "that jurists of reason could debate the propriety of the district court's assessment of his constitutional claims or conclude that his claims

are 'adequate to deserve encouragement to proceed further.'" *United States v. Wainwright*, 237 F. App'x 913, 914 (5th Cir. 2007) (per curiam) (quoting *Miller-El*, 537 U.S. at 327); *see Foster*, 466 F.3d at 364.

Considering the Supreme Court's decision in *Davis* and the specific facts of this case, "jurists of reason could debate the propriety" of the recommendations contained herein and conclude "that [the] claims are adequate to deserve encouragement to proceed further." Therefore, Jones should be granted a COA on the following issues: (1) whether the appellate-review waiver in his plea agreement bars his *Davis* claim; and (2) whether his appellate-review waiver is unenforceable under the miscarriage of justice exception.

## Recommendation

For the foregoing reasons, the Court should DENY Jones's § 2255 motion and GRANT a certificate of appealability.

Signed October 22, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).